**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS S. LODGE and BROOKSIDE
DESIGN, LLC,

                Plaintiffs,

v.

MAYLINE COMPANY, LLC and
MAYLINE HOLDCO, INC.,

                Defendant.

Civ. No. 10-4100 (DRD)

**O P I N I O N**

*Appearances by:*

CARROLL, McNULTY & KULL, LLC
by: Gary S. Kull, Esq. and Matthew Lodge, Esq.
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920

    *Attorneys for Plaintiffs*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
by: Richard C. Mariani, Esq.
10 Madison Avenue
Morristown, NJ 07960

BUELOW, VETTER, BUIKEMA, OLSON & VLIET, LLC
by: Joel S. Aziere, Esq., Sarrie L. Pozolinski, Esq., and Mark F. Vetter, Esq.
20855 Watertown Road
Suite 200
Waukesha, WI 53186

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a motion submitted by Defendants, Mayline Company, LLC ("Mayline LLC") and Mayline Holdco, Inc. ("Mayline Holdco"),[1] requesting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of the claims asserted against them by Plaintiffs, Thomas S. Lodge and Brookside Design, LLC ("Brookside").  In the alternative, Defendants request that the Court transfer venue to the United States District Court for the Northern District of Illinois, where a related action is currently pending.

For the reasons set forth below, Defendants' Motion to Dismiss will be denied, but their request that the case be transferred to the Northern District of Illinois will be granted.  The forum selection clause in the 1992 Non-Compete Agreement out of which this action arises specifies that each party agrees to the jurisdiction of a state or federal court in Illinois.  That clause is permissive, and thus did not prohibit Plaintiffs from filing this action.  However, it does not allow Plaintiffs to escape the suit currently pending in the Northern District of Illinois.  Therefore, a refusal to transfer this action would result in duplicative litigation which, in turn, would waste the resources of both the litigants and the Court.  Such circumstances, along with the various factors discussed below that render the Northern District of Illinois a more appropriate forum for the resolution of this dispute, justify an exercise of the Court's discretion to transfer venue pursuant to 28 U.S.C. § 1404(a).

### I.  BACKGROUND

Mr. Lodge is a former employee of Mayline, which manufactures and sells office furniture.  Prior to joining Mayline, Mr. Lodge was employed by another office furniture company, where he specialized in the sale of vertical print "clamps" and shelving units known as

---

[1] For the sake of convenience, the Court will refer to Mayline LLC and Mayline Holdco collectively throughout this ruling simply as "Mayline."

"racks" that are used to store blueprints and other large documents. During his employment at Mayline, Mr. Lodge was responsible for overseeing that company's sales, which included racks and clamps, in the eastern one third of the United States.

When he joined Mayline in 1992, Mr. Lodge signed a "Non-Compete Agreement" (hereinafter "1992 Agreement") in which he promised, in relevant part, that:

> For one year after termination of employment for any reason whatsoever, Employee will not, within the United States … engage in any activity which is the same as or similar to his activities on behalf of [Mayline] in connection with any product which is the same as, similar to, or competitive with any of [Mayline's] products.

(Compl. Ex. A at 3, ¶ E.)

The 1992 Agreement also included a choice of law and venue provision, which stated that:

> Employee and [Mayline] agree to submit to the jurisdiction of any local, state, or federal court in Illinois in order to resolve any disputes arising under or relating to this Agreement. This Agreement shall be interpreted and enforced in accordance with the laws of Illinois.

(Id. at 4, ¶ B.)

In 2007, Mr. Lodge and Mayline Holdco entered another contract, which was titled "Management Equity Agreement" (hereinafter "2007 Agreement"). The bulk of that 16-page Agreement was dedicated to setting forth terms and conditions relating to a series of securities options granted to Mr. Lodge in recognition of his work for Mayline. See (Compl., Ex. B at 1-3 (outlining nature of options and vesting schedule), 5-7 (stating terms under which options could be exercised by Mr. Lodge or repurchased by Mayline), 9-13 (defining terms related to securities, such as "preferred shares," "fair market value," "public sale," etc.).) However, the original draft of the 2007 Agreement included a "restrictive covenant" that prohibited Mr. Lodge from competing with Mayline for a specified period of time following his departure from that

3

company.  See (Id. at 3-4, ¶ 1(e).)² That restriction differed from the one contained in the 1992 Agreement in two ways.  First, whereas the 1992 Agreement had prohibited Mr. Lodge from competing with Mayline "within the United States," (Compl. Ex. A at 3, ¶ E), the 2007 Agreement applied worldwide.  (Compl. Ex. B at 4, ¶ 1(e)(ii)) (prohibiting Mr. Lodge from engaging in competitive activity "in any of the United States of America, Canada, China or any other country in the world").  Additionally, the 2007 Agreement included a three-year restriction on competition instead of the one-year period specified by the 1992 Agreement.  Compare (Compl. Ex. B at 12, ¶ 4(w)) (defining the "restricted period" as "the period … ending on the third anniversary of the Termination Date") with (Compl. Ex. A at 3, ¶ (E)) (prohibiting competition "[f]or one year after termination of employment").

In apparent recognition of those differences, the 2007 Agreement included a provision which declared that the restrictions in the 1992 Agreement would supersede those in the 2007 Agreement, stating:

---

² The restrictive covenant stated, in relevant part that:

> During the restricted period, Executive shall not and shall cause each of his Affiliates not to, in any of the United States of America, Canada, China or any other country in the world:
>
> (A) enter into or engage in any business that competes with [Mayline]; or
>
> (B) solicit customers, active prospects, business, patronage or orders for any business, wherever located, that competes with [Mayline] or sell any products or services for any business, wherever located, that competes with [Mayline] or that sells products or services similar to those provided by [Mayline]; or
>
> (C) solicit, divert, entice or otherwise take away any customers, former customers, active prospects, business, patronage or orders of [Mayline] or any of its Subsidiaries or attempt to do so; or
>
> (D) counsel, promote or assist, financially or otherwise, any Person, engaged in any business that competes with [Mayline].

4

> If Executive is a party to an Employment or Non-Competition Agreement … with the Company or any of its Subsidiaries, he will be considered to have violated the restrictive covenants in this [Agreement] if he violates any of the restrictive covenants in that Employment and non-Competition Agreement or other employment contract.

(Compl. Ex. B at 3, ¶ 1(e).)

Elsewhere, the 2007 Agreement made it clear that its restrictions would only supersede prior agreements that related to its "subject matter" – the grant of securities options. See (Id. at 14, ¶ 6(c)) ("This Agreement and those documents expressly referred to in it … supersede and preempt any prior understandings, agreements, or representations … that may have related in any way to the subject matter of this Agreement.").

Nonetheless, Mr. Lodge crossed out the restrictive covenant and all subsequent references to its prohibitions prior to signing the 2007 Agreement. Next to each place in which he crossed out text, he included his initials, "TL," and the date, "9-14-07," on which he did so. See (Id. at 3, 4, 5, 7, 8, 12.) Mayline Holdco's President signed a copy of the agreement which included Mr. Lodge's handwritten modifications. (Id. at 17.)

On July 1, 2010, Mr. Lodge resigned his employment with Mayline. Three months earlier – on March 29, 2010 – he formed Brookside, an office furniture company that specializes in the sale of clamps and racks and is the other Plaintiff in this case. Immediately after leaving Mayline, Mr. Lodge began operating Brookside as its President and sole employee. As soon as it began operations, Brookside sought to market its clamps and racks by soliciting sales through at least one catalogue and an internet reseller of office furniture.

Alleging that his activities on behalf of Brookside constituted a violation of the non-compete provisions of the 1992 Agreement, attorneys for Mayline sent Mr. Lodge a letter on July 21, 2010 requesting that he "cease and desist" from selling office furniture through

5

Brookside.  Over the next few weeks, the parties engaged in settlement discussions.  On August 10, 2010, Mayline sent Mr. Lodge another letter instructing him to stop selling office furniture through Brookline.  In that correspondence, Mayline's attorney specifically stated that, if the discussions with Mr. Lodge did not result in a settlement, he had "been directed to file a lawsuit in Illinois seeking injunctive relief and enforcement of the [1992] Non-Compete Agreement." (Defs.' Br. Opp'n Mot. Prelim. Inj., Decl. of Mark F. Vetter ("Vetter Decl."), Ex. 2 at 2.)  Later that day, Mr. Lodge commenced this suit.  The parties continued to engage in settlement discussions, but have been unable to resolve their differences.

In his Complaint – which, as discussed above, he filed on August 10, 2010 after receiving word from Mayline's attorneys that they would institute litigation in Illinois if the parties' settlement discussions were unsuccessful – Mr. Lodge seeks declaratory judgment pursuant to 28 U.S.C. § 2201 that he is not subject to a restrictive covenant prohibiting him from competing with Mayline.  In doing so, he asserts three arguments.

First, Mr. Lodge contends that the 2007 Agreement superseded and rendered void the 1992 Agreement.  (Compl. ¶¶ 48, 85-86.)  He then asserts that he "affirmatively rejected the restrictive covenant" contained in the 2007 Agreement "by crossing out its terms and initialing the agreement in the margins."  (Compl. ¶ 72.)  Thus, Mr. Lodge argues that, since the 2007 Agreement abrogated the 1992 Agreement and the former did not contain a non-compete provision in the version executed by the parties, he is not subject to any restriction that would prohibit him from competing with Mayline by selling office furniture through Brookside.  In the first count of his Complaint, he requests declaratory judgment to that effect pursuant to 28 U.S.C. § 2201.

6

In the alternative, Mr. Lodge contends in his Complaint that the restrictive covenant contained in the 1992 Agreement is unenforceable under Illinois law.[3] In connection with that argument, Mr. Lodge points to several aspects of the restrictive covenant that he claims render it overly broad and overly burdensome, including (1) the fact that its terms prohibit him from competing with Mayline anywhere in the United States rather than being limited to the area where he previously conducted sales for that company, (2) the generic nature of the products at issue – clamps and racks – which Mr. Lodge contends renders any insider knowledge he may have gained during his previous experience with Mayline irrelevant to his current efforts on behalf of Brookside, and (3) the portions of the 1992 Agreement that require him to submit to the jurisdiction of a court in Illinois and pay Mayline's attorneys fees in the event that the company prevails in a dispute regarding the agreement, but do not impose a reciprocal requirement on Mayline.  See (Compl. ¶¶ 89-94.)

Finally, Mr. Lodge requests declaratory judgment that Mayline LLC and Mayline Holdco lack standing to enforce the restrictive covenants contained in the 1992 Agreement.  Mr. Lodge bases that contention on various twists and turns in the chain of corporate succession involving the Mayline companies.  Specifically, he notes that the 1992 Agreement was entered into with an entity known as Mayline Company, Inc., the company with which he started work in that year.  Mr. Lodge claims that Mayline Company, Inc. was "administratively or involuntarily dissolved" on May 20, 1993.  (Compl. ¶ 100.)  He then asserts that he was not employed by Mayline LLC until 1999.  (Compl. ¶ 102.)  Thus, Mr. Lodge claims that neither Mayline Holdco nor Mayline

---

[3] As discussed above, the 1992 Agreement specifies that its terms must be construed in accordance with Illinois law.  (Compl. Ex. A at 4, ¶ B.)

7

LLC is the proper successor to Mayline Company, Inc.[4]  (Compl. ¶¶ 103, 107.)

On the same day that he filed this action, Mr. Lodge moved for a preliminary injunction prohibiting Mayline from filing suit against him in Illinois.  However, he continued negotiating with Mayline in an effort to reach a settlement, and apparently did not inform the company's attorneys that he had filed this suit until August 18, 2010.  Two days later, while Mr. Lodge's request for a preliminary injunction prohibiting it from doing so was still pending, the company commenced a similar action in the Northern District of Illinois.  In that suit, Mayline seeks to enforce the 1992 Agreement by means of an injunction prohibiting Mr. Lodge from selling office furniture through Brookside.  Mayline has not asserted a counterclaim in this action seeking similar relief.

At a hearing on September 21, 2010, the Court denied Mr. Lodge's request for a preliminary injunction prohibiting Mayline from filing suit against him in Illinois.  In doing so, the Court noted that such a suit had already been filed and the Motion was therefore moot, but also stated on the record that the 2007 Agreement did not supersede the 1992 Agreement.  In making that statement, the Court noted that the 2007 Agreement dealt almost exclusively with the terms and conditions of the stock options granted to Mr. Lodge.  Even if the draft of the 2007

---

[4] In connection with these proceedings, Mayline submitted substantial evidence that Mayline LLC is the proper corporate successor to Mayline, Inc.  That evidence included an affidavit from Paul Simons, the President of the "Mayline Group" – a consortium of companies that includes the three aforementioned Mayline entities – tracing the evolution of Mayline, Inc. into Mayline LLC.  Mr. Lodge's own contentions support that narrative: he admits that he continued to receive paychecks from Mayline Company, Inc. from 1993 to 1998 – a five-year period in which he claims that company did not exist. (Compl. ¶ 101.)  and concedes that Mayline LLC became his employer in 1999. (Compl. ¶¶ 101-02.)  Mr. Lodge does not point to any change in his pay, substantive job duties, or any other factor that would lead a reasonable person to believe that there was a change in his employer from 1993 to 1999.  See (Compl. ¶ 102.)  Therefore, the Court will assume for the purposes of this ruling that Mayline LLC is the successor to Mayline, Inc., and has standing to enforce the 1992 Agreement.  In doing so, the Court emphasizes the preliminary nature of the evidence before it, and leaves the ultimate resolution of the standing question to the Northern District of Illinois.

Agreement relied on by Mr. Lodge had related to the subject matter of the 1992 Agreement, the Court ruled that it would not have superseded the non-compete provision in the 1992 Agreement because Mr. Lodge crossed out the non-compete provision in the 2007 Agreement before signing it. Thus the final version of the 2007 Agreement executed by the parties did not include any non-compete clause that would arguably have conflicted with the one contained in the 1992 Agreement.

## II.  DISCUSSION

Mayline now moves to dismiss Mr. Lodge's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of that request, the company asserts that Mr. Lodge's claims are moot because they seek declaratory judgment prohibiting Mayline from enforcing the 1992 Agreement, which it has already done by filing a suit in the Northern District of Illinois. Even if Mr. Lodge's claims are not moot, Mayline argues that the Court should exercise its discretion under 28 U.S.C. § 2201 not to entertain those claims.

If the Court does not dismiss Mr. Lodge's claims, Mayline contends that it should transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). That contention is premised on four main arguments. First, Mayline contends that the "interests of justice" require transfer to the Northern District of Illinois because Mr. Lodge brought this suit in bad faith. Specifically, Mayline notes that Mr. Lodge brought this suit on the same day that its attorneys threatened to institute litigation against him in Illinois, and continued to engage in settlement discussions even after filing his Complaint. Second, Mayline argues that the forum selection clause contained in the 1992 Agreement – which stated that both parties "agree[d] to submit to the jurisdiction of [a] court in Illinois" – weighs in favor of transfer. Third, the company asserts that various "private interests" render the Northern District of Illinois a more

9

convenient forum and favor transferring the suit to that venue.  Among those interests, Mayline notes that (1) Mayline Holdco's corporate headquarters are located in Chicago, Illinois and (2) with the exception of Mr. Lodge, all of the witnesses and documents that will be relevant to this dispute are either in Illinois or at Mayline LLC's offices in the neighboring state of Wisconsin.  Moreover, Mayline points out that the contract out of which this case arises – the 1992 Agreement – was executed in Wisconsin, a location more proximate to the Northern District of Illinois than to this Court.  Finally, Mayline argues that two "public interest factors" weigh in favor of transfer:  (1) Illinois's interest having Mayline Holdco – a resident corporation – regulated by a court in that state, and (2) the likelihood that the Northern District of Illinois will be more familiar with Illinois law (which will govern pursuant to the terms of the 1992 Agreement).

   In his opposition to Mayline's Motion to Dismiss, Mr. Lodge argues that his claims in this suit are not moot.  Specifically, he points out that the ultimate relief sought by his Complaint is not an injunction prohibiting Mayline from instituting suit in Illinois, but rather declaratory judgment that he is not bound by the non-compete provision in the 1992 Agreement.  Regarding Mayline's second argument, Mr. Lodge contends that a court's refusal to hear declaratory judgment claims under 28 U.S.C. § 2201 must be premised on a "well-founded" reason.  He then asserts that Mayline has failed to articulate such a reason in this case.

   Mr. Lodge also opposes transferring this action to the Northern District of Illinois.  In doing so, he asserts that that the "first-filed" rule – which generally requires in cases where multiple courts may have jurisdiction over an action that it be decided by the court in which it was filed earliest – weighs strongly against transfer.  As part of that argument, Mr. Lodge engages in a detailed retelling of the circumstances surrounding the filing of this suit that he

claims demonstrates that he did not act in bad faith by instituting litigation while he was still engaged in settlement discussions with Mayline.

Mr. Lodge attempts to rebut Mayline's argument that the forum selection clause contained in the 1992 Agreement requires transfer by reasserting his argument – which, as discussed above, the Court rejected while denying his earlier Motion for a Preliminary Injunction – that the 1992 Agreement was superseded by the 2007 Agreement. Even if the 1992 Agreement remains in force, Mr. Lodge contends that the forum selection clause contained in that document was permissive rather than mandatory, and therefore does not bar him from pursuing his claims in this district. In light of the allegedly permissive nature of that provision, Mr. Lodge contends that the Court should follow the general rule that a plaintiff's choice of forum is entitled to "paramount consideration," and deny Mayline's request for a transfer to the Northern District of Illinois. (Pl.'s Br. Opp'n Mot. Dismiss 22-23.)

Finally, Mr. Lodge contends that New Jersey will be a more convenient forum than the Northern District of Illinois. In connection with that argument, Mr. Lodge points out that he resides in New Jersey, Brookside is headquartered in that state, and the competition that Mayline contends was impermissible took place there. Mr. Lodge contends that he has limited financial means and will suffer severe hardship if forced to retain local counsel in Illinois and travel to that state in order to litigate his claims. Moreover, he notes that the majority of the Mayline personnel involved with his activities, along with virtually all documents that will be relevant to this dispute, are located at the company's offices in Wisconsin, not Illinois. The last factor pointed to by Mr. Lodge is a mirror reflection of one of Mayline's contentions; whereas Mayline argues that this Court should transfer to the Northern District of Illinois because Mayline Holdco is headquartered in that state, Mr. Lodge contends that it should refuse to do so because both he

and Brookside are domiciled in New Jersey, which he claims "has a great interest in addressing [his] suit and in protecting the rights of its residents." (Id. at 31.)

The pending Motions are interrelated insofar as a decision holding that Mr. Lodge's claims should be dismissed would make it unnecessary to determine whether this district is the proper venue for the resolution of those claims. Therefore, the Court will address the Motion to Dismiss before turning to Mayline's request for a transfer of venue to the Northern District of Illinois.

**A. Motion to Dismiss**

As discussed above, Mayline premises its Motion to Dismiss on the contention that Mr. Lodge's claims are moot. That contention is inapposite.

The central failing of Mayline's argument is revealed by a close examination of the language in its brief, which asserts that:

> [T]hrough their claims for declaratory judgment and preliminary injunctive relief, Plaintiffs seek to prohibit Mayline from enforcing [the 1992 Agreement]. However, Mayline has already filed a lawsuit in the Northern District of Illinois seeking enforcement of [the 1992 Agreement]. Thus, Plaintiffs' claims are moot.

(Def.'s Br. Supp. Mot. Dismiss 5-6) (internal citations omitted).

The key word in that assertion is "seeking." Mayline's suit in the Northern District of Illinois has not resulted in a judgment that the 1992 Agreement in enforceable. Although Mayline seeks such a judgment, there is no guarantee that it will be successful. To the contrary, if this Court were to decide prior to such a judgment that Mr. Lodge was not bound by the non-compete provision in the 1992 Agreement – the very ruling sought by Mr. Lodge's claims for declaratory relief – that judgment would be binding on the Illinois suit and would preclude Mayline from enforcing the 1992 Agreement through that suit. In other words, there is still a chance that Mr.

Lodge could achieve the relief he seeks in this action. Therefore, his claims are not moot and cannot be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Mayline's second argument in favor of dismissal – that the Court should exercise its discretion under 28 U.S.C. § 2201 not to entertain Mr. Lodge's claims for declaratory relief – is arguably more meritorious. However, in light of the Court's ruling that, for the reasons set forth below, that this matter should be transferred to the Northern District of Illinois, that argument need not be addressed. In fact, since Mayline's second argument in favor of dismissal implicates the discretion inherent in 28 U.S.C. § 2201, it would be improper for this Court to elevate its own preferences above those of the venue to which it plans to transfer Mr. Lodge's claims. Therefore, the Court will leave the question of whether to entertain Mr. Lodge's declaratory judgment claims to the sound discretion of the Northern District of Illinois.

**B. Motion to Transfer Venue**

Mayline's request that this case be transferred to the Northern District of Illinois is governed by 28 U.S.C. § 1404(a), which states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In assessing a request for transfer pursuant to that statute, "courts have not limited their consideration to the three factors enumerated in § 1401(a) (convenience of the parties, convenience of witnesses, or interests of justice)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Rather, a court deciding whether to transfer venue must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. (quotations omitted).

The factors to be considered fall into two broad categories: private interests and public interests. Among the former are (1) the plaintiff's forum preference, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties indicated by their relative physical and financial condition, (5) the convenience of witnesses, and (6) the location of books and record relevant to the dispute. Id. The last two factors are not relevant unless the witnesses and/or records would be unavailable at trial in one of the two fora. Id. The public interests to be considered include (1) practical concerns that could reduce the time and expense necessary to resolve the claims at issue, (2) the relative administrative difficulty in the two fora resulting from court congestion, (3) the local interest in deciding controversies at home, (4) the public policies of the fora, and (5) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80. The court evaluating a motion for transfer enjoys "substantial flexibility" in assigning the relative weight accorded to each factor. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 44 (3d Cir. 1988). No factor is dispositive. Rather, "each case turns on its facts." Id.; see also Lawrence v. Xerox Corp., 56 F. Supp.2d 442, 450 (D.N.J. 1999) ("A transfer analysis under Section 1404 is a flexible and individualized analysis which must be made on the unique facts presented in each case.").

Within the framework of the aforementioned private and public interest factors, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. "Although the parties' agreement as to the most proper forum [does] not receive dispositive weight, it is entitled to substantial consideration. Id. (citations omitted). "[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue."

Id. In such situations, "the plaintiff bears the burden of demonstrating why they should not be bound by their contractual choice of forum." Id.

As discussed above, Mr. Lodge argues that he should not be bound by the forum selection clause contained in the 1992 Agreement. In doing so, he asserts that the 2007 Agreement superseded the 1992 Agreement, and therefore both the non-compete provision and forum selection clause contained in the latter are a nullity. That argument, which the Court rejected during the earlier proceedings relating to Mr. Lodge's request for a preliminary injunction, lacks merit. The 2007 Agreement stated that it superseded prior agreements that "may have related in any way" to its "subject matter." (Compl. Ex. B at 14, ¶ 6(c).) In asserting that the 2007 Agreement – which dealt almost exclusively with the terms and conditions of various stock options granted in recognition of his work – related to the 1992 Agreement, Mr. Lodge relies on the fact that the early drafts of the 2007 Agreement included a non-compete provision which he claims overlapped the one in the 1992 Agreement. It is undisputed, however, that Mr. Lodge deleted that provision from the 2007 Agreement before it was executed by the parties. Moreover, Mr. Lodge's argument ignores a clause in the draft 2007 Agreement that would have rendered the restrictive covenants in that Agreement subordinate to the one in the 1992 Agreement even if he had not deleted them before signing. See (Compl. Ex. B at 3, ¶ 1(e)) ("If Executive is a party to an Employment or Non-Competition Agreement … with the Company or any of its Subsidiaries, he will be considered to have violated the restrictive covenants in this [Agreement] if he violates any of the restrictive covenants in that Employment and non-Competition Agreement or other employment contract.") Therefore, the Court rejects Mr. Lodge's contention that the 2007 Agreement superseded the 1992 Agreement, and finds that the forum selection clause in the latter document remains in force.

Even in light of that ruling, Mr. Lodge contends that he is not bound by the forum selection clause in the 1992 Agreement because that provision is permissive rather than mandatory. Mr. Lodge is correct that the forum selection clause is permissive – it states that the parties to the 1992 Agreement "agree to submit to the jurisdiction of any local, state, or federal court in Illinois," but does not prohibit them from filing suit in other jurisdictions. (Compl. Ex. A at 4, ¶ B.) Given the circumstances of this case, however, the fact that the 1992 Agreement's forum selection clause is mandatory rather than permissive is of little moment. Mr. Lodge was within his rights under that Agreement to file suit in this district, but now that he has been sued in Illinois, he cannot escape that forum in light of his prior agreement to submit to the jurisdiction of a federal court in Illinois. Thus, if the Court refused to transfer this case to the Northern District of Illinois, both Mayline's suit in that district seeking to enforce the non-compete provision of the 1992 Agreement and Mr. Lodge's action in this district seeking declaratory judgment that it may not do so would proceed. Such a result would create unnecessary and duplicative litigation that would waste the resources of both courts and would impose on the parties the unreasonable burden of litigating virtually identical claims concurrently in two different fora. Therefore, the Court finds that the forum selection clause contained in the 1992 Agreement weighs heavily in favor of transferring this case to the Northern District of Illinois, and overrides Mr. Lodge's choice of forum. See Jumara, 55 F.3d at 880.

At least two of the other private and public interests that the Court must consider weigh heavily in favor of transfer. First, and most important, is the consideration of which forum will be more familiar with the underlying law. The 1992 Agreement is governed by Illinois law. (Compl. Ex. A at 4, ¶ B.) While this Court often applies the law of states other than New Jersey when exercising its diversity jurisdiction, the mere fact that it is capable of doing so does not

16

mean that it is as familiar with the substance of Illinois law as the Northern District of Illinois. To the contrary, there can be no serious dispute that the Northern District of Illinois is more familiar with the substantive law of that state – a familiarity which will be especially important in this case given Mr. Lodge's contention that the 1992 Agreement is unenforceable under Illinois law because it is overbroad.  See (Compl. ¶¶ 87-97.)

The circumstances of this case further compound the importance of the Northern District of Illinois's familiarity with that state's law.  If this Court refused Mayline's request for a transfer, it would essentially set up a race between itself and the Northern District of Illinois. Under the principle of collateral estoppel, the judgment of either court would be binding on the other.  Thus, if this Court reached a final decision as to the proper application of Illinois law, it would be binding on the Northern District of Illinois, despite the fact that the latter undisputedly has greater expertise in that area.  In the event that this Court erroneously decided the case due to its lack of expertise in Illinois law – a possibility that the Court would like to believe is remote, but must acknowledge as a human, and therefore fallible, institution – the Northern District of Illinois would be required to follow that decision even though it knew better.  Such a result would be perverse, and counsels strongly in favor of transfer.

As a corollary to that point, the Court finds that consideration of the public policies of the fora weigh in favor of transfer.  Specifically, this case implicates Illinois contract policy, which will be better carried out by the Northern District of Illinois.  While Mr. Lodge argues that New Jersey has an interest in a local forum deciding the dispute because both he and Brookside are located in that state, that argument ignores Illinois's countervailing interest based on the location of Mayline Holdco in Chicago.

None of the other factors relevant to the Court's analysis lend significant weight to either parties' argument. There is no indication that the Northern District of Illinois will be a less efficient forum for resolving the dispute, and it does not appear that the docket of that Court is so overloaded as to justify a refusal to transfer the case. While Mr. Lodge contends that the claims in both suits arose in New Jersey because Brookside is headquartered in that state, one could make the argument that the center of gravity of this dispute is Illinois because of Mayline Holdco's location in that state and the fact that both parties' claims are based on a contract which specifies Illinois as its favored forum and is governed by that state's law. The location of witnesses and relevant documentary records is not relevant because there is no indication that those witnesses and records will be unavailable for trial regardless of the forum.[5] See Jumara, 55 F.3d at 879.

The only factor that weighs in Mr. Lodge's favor is consideration of the convenience of the parties as indicated by their relative financial condition. Mr. Lodge argues that it would cause him financial hardship to litigate his claims in Illinois. The Court sympathizes with that contention, but finds that it is outweighed by the factors discussed above. Moreover, a refusal to transfer this case would not relieve Mr. Lodge of the financial burden of litigating in the Northern District of Illinois, as Mayline could still pursue its claims in that forum even if the Court refused to transfer this case. Therefore, the Court finds that consideration of the factors relevant to 28 U.S.C. § 1404(a) weighs in favor of transferring this case to the Northern District of Illinois, and will grant Mayline's motion for such a transfer.

---

[5] If the location of witnesses and documents necessary to the parties' claims was relevant, consideration of that factor would favor the Northern District of Illinois. It is undisputed that most of the individuals and records at issue are located at Mayline LLC's headquarters in Wisconsin, which is much closer to the Northern District of Illinois than this district.

## III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied.  Defendants' request that the case be transferred to the Northern District of Illinois is granted.

The Court will enter an Order implementing this Opinion.


        **s/ Dickinson R. Debevoise**  
        DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  November 19, 2010